

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

**ENTERED**
**03/17/2010**

| | | |
|---|---|---|
| IN RE: | § | |
| LUCILLE L. CLAYTON; fka DELMELLO, | § | Case No. 08-37108 |
| Debtor(s). | § | |
| | § | Chapter 13 |
| | § | |
| LUCILLE L. CLAYTON, *et al*, | § | |
| Plaintiff(s) | § | |
| | § | |
| VS. | § | Adversary No. 09-03024 |
| | § | |
| OLD KENT MORTGAGE COMPANY, *et al*, | § | |
| | § | |
| Defendant(s). | § | Judge Isgur |

### MEMORANDUM OPINION GRANTING, IN PART, AND DENYING, IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

For the reasons set forth below, the Court grants, in part, and denies, in part, the motion for summary judgment filed by Defendant Fifth Third Mortgage Company ("Fifth Third") (docket no. 94).

### Factual Background

Plaintiffs Lucille and Jimmy Clayton ("the Claytons") filed this adversary proceeding against Defendants Fifth Third, Old Kent Mortgage Company ("Old Kent"), and Clayton Hunley Homes Corporation ("Clayton Hunley Homes") on January 12, 2009.[1] The lawsuit concerns the Claytons' Houston residence. The Claytons contracted with Clayton Hunley Homes, Mr. Clayton's construction company, to build their residence. To fund construction, the Claytons issued a promissory note in the amount of $69,900.00 and a mechanics' lien to Clayton Hunley Homes.

---

[1] On June 8, 2009, the Court dismissed Old Kent from the adversary proceeding (docket no. 65). Old Kent executed the loan documents at issue. Subsequently, Old Kent merged with Fifth Third, its successor in interest, and ceased to exist as a separate entity. To avoid confusion, the Court refers to Fifth Third only.

In June of 2000, the Claytons executed various documents (the "Construction Documents") to obtain a construction loan from Fifth Third.  Pursuant to the Construction Documents, the Claytons refinanced the $69,900.00 note with a new $78,000.00 note and executed a deed of trust to secure the $78,000.00 note.  The Claytons also transferred the mechanics' lien and various rights and warranties provided under the construction contract that existed between the Claytons and Clayton Hunley Homes.  Only Mr. Clayton signed the $78,000.00 note.

The Claytons allege that, pursuant to the Construction Documents, the parties had distinct rights and obligations during a "construction period" and during a "permanent phase."  The "permanent phase" was to begin upon completion of the home.  The Claytons allege that they defaulted under the Construction Documents during the "construction period" by failing to complete construction of the home by the required date.  Due to the default, the Claytons allege that the loan never "rolled-over" to the "permanent phase" and the parties' rights and obligations should be limited to those provided for during the "construction period."  The Claytons also allege that Fifth Third violated the automatic stay when Fifth Third attempted to accelerate the promissory note and foreclose on their residence after Mrs. Clayton filed her first chapter 13 bankruptcy petition in 2003 ("the prior bankruptcy case").  The Claytons seek a declaratory judgment defining the parties' rights and obligations under the Construction Documents, damages from alleged misrepresentations and stay violations, a contempt finding, and legal fees and costs.

The Claytons' January 12, 2009 complaint is not the first that the Claytons have filed against Fifth Third.  Since 2003, the Claytons have been fighting Fifth Third in multiple bankruptcy cases and adversary proceedings.  In addition to the bankruptcy proceedings, Fifth

Third alleges that the parties have been involved in five state court lawsuits. Each proceeding has essentially been based on the same dispute regarding the same home. The same dispute has been balkanized into separate pieces argued before separate courts with the end result being that the Claytons' home remains an unfinished residence worth less than $100,000.00, both parties have incurred expensive legal bills, and no progress has been made towards resolving the dispute.

Fifth Third has asserted counterclaims against the Claytons for breach of contract resulting from Mr. Clayton's failure to (i) pay the $78,000.00 note in accordance with its terms; and (ii) perform under the terms of the deed of trust that secures the note. Fifth Third alleges that it has now successfully foreclosed on the home and seeks legal fees as well as a writ of possession following its foreclosure.

## Procedural Background

Mrs. Clayton filed the prior bankruptcy case in August of 2003. After over five years, the case was closed in November of 2008, without confirmation of a plan. Much of the delay arose from a dispute between the Claytons and Fifth Third. The Claytons filed an adversary proceeding against Fifth Third in 2007. After mediation, a remand, and other related state court litigation, the Claytons' dispute with Fifth Third remained unresolved.

Mrs. Clayton filed the present chapter 13 bankruptcy case on November 3, 2008. She timely filed a motion to extend the automatic stay pursuant to § 362(c)(3)(B). Fifth Third objected and the Court held a hearing on Mrs. Clayton's motion on December 3, 2008. During the hearing, the parties stated that they were not interested in delay, but instead wanted a single court to resolve all pending matters so both parties could move on.

This Court stated that, as long as the parties were willing to waive any jury trial right, the Court would resolve all pending matters in an expedited manner.

Based on the parties' representations, the Court extended the automatic stay with certain conditions, including conditions that would lead to resolution of all the parties' claims by this Court.  The Court ordered Mrs. Clayton to file an adversary proceeding against Fifth Third by January 10, 2009.  The Court required Mrs. Clayton to name Mr. Clayton and Clayton Hunley Homes as defendants so that all pending claims could be adjudicated.   The Court also conditioned the stay upon Mrs. Clayton's waiver of any 7th Amendment jury trial right.  Any failure by Mrs. Clayton to comply with the conditions would terminate the automatic stay. Furthermore, the automatic stay would lift upon the filing of a Certificate of Default by Fifth Third.  Mrs. Clayton consented to these requirements during the December 3, 2008 hearing, and the Court issued an Order Extending and Conditioning the Automatic Stay on December 7, 2008 (docket no. 31).

Mrs. Clayton did not comply with the Court's Order conditioning the automatic stay.  She did not name Mr. Clayton and Clayton Hunley Homes as defendants.[2]  On March 13, 2009, Mrs. Clayton filed a jury demand (docket no. 24).   Subsequently, Fifth Third filed a Certificate of Default on February 13, 2009 (main case no. 08-37108, docket no. 64) and foreclosed on the Claytons' residence.

Fifth Third also filed a jury demand (docket no. 9), on which basis it filed a Motion to Withdraw the Reference (docket no. 15).   The Court issued a Report and Recommendation recommending that the District Court withdraw the reference of this adversary proceeding and

---

[2] The Claytons subsequently filed an amended complaint naming Mr. Clayton and Clayton Hunley Homes as defendants.  Fifth Third did not oppose the Clayton's amendment.  Accordingly, the Court issued an order granting leave to amend on April 14, 2009 (docket no. 38).

related matters from the bankruptcy case (docket no. 47).  The District Court adopted the Report and Recommendation in part, but left pre-trial and related matters with this Court (docket no. 51).

## Defendant's Motion for Summary Judgment

On September 16, 2009, Fifth Third filed a motion for summary judgment with respect to all of the Claytons' causes of actions:  (1) Declaratory Relief to Determine the Owner and Holder of the Note, Mechanic's Lien Note, Other Loan Documents, and the Beneficiary of Liens Securing the Note; (2) Declaratory Relief to Determine the Terms of the Note, the Deed of Trust, and Other Loan Documents and Liens; (3) Damages for Misrepresentation of the Character of the Loan Documents; (4) Damages for Misrepresentation of the Owner and Holder of the Note; (5) Violation of Automatic Stay; (6) Contempt; (7) Declaratory Relief Regarding the Mechanic Lien's Notice; and (8) Mr. Clayton's Statute of Limitations Defense.  Fifth Third seeks legal fees and costs through trial and appeal.

## Jurisdiction

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334.  Venue is proper in this District pursuant to 28 U.S.C. § 1409.

## Summary Judgment Standard

Summary judgment should be granted "if the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Gray Law*

*LLP v. Transcon. Ins. Co.*, 560 F.3d 361, 365 (5th Cir. 2009). Federal Rule of Bankruptcy Procedure 7056 incorporates Rule 56 in adversary proceedings.[3]

A party seeking summary judgment must demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine issue of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006). A genuine issue of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5 th Cir. 2008) ("A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party."); *James v. Tex. Collin County*, 535 F.3d 365, 373 (5th Cir. 2008). A court views the facts and evidence in the light most favorable to the non-moving party at all times. *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009); *LeMaire v. La. Dept. of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007). Nevertheless, a court is not obligated to search the record for the non-moving party's evidence. *Malacara v. Garber*, 353 F. 393, 405 (5th Cir. 2003). The Court should not weigh the evidence inasmuch as a credibility determination may not be part of the summary judgment analysis. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

"The moving party bears the burden of establishing that there are no genuine issues of material fact." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412

---

[3] Rule 56 was amended, effective December 1, 2007. Although most changes were stylistic, the changes to Rule 56(c) were substantive. Prior to the amendment, Rule 56(c) provided that the Court "shall" grant summary judgment if the relevant criteria were met. Effective December 1, 2007, the word "shall" was changed to "should". The Committee Notes to the 2007 amendment state that the word "[s]hould" was substituted for "shall" to recognize that, "although there is no discretion to enter summary judgment when there is a genuine issue as to any material fact, there is discretion to deny summary judgment when it appears that there is no genuine issue as to any material fact." FED. R. CIV. P. 56 advisory committee's notes (2007). As one commentator noted, "even when a motion for summary judgment is properly made and supported, it need not be granted . . . [s]uch a motion may be granted - indeed, it should be granted - but it does not have to be granted." Bradley S. Shannon, *Should Summary Judgment Be Granted?*, 58 AM. U. L. REV. 85, 95 (2008).

(5th Cir. 2008). The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence that would entitle the movant to judgment at trial. *Malacara v. Garber*, 353 F.3d 393, 403 (5th Cir. 2003); *Chaplin v. Nationscredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine issue of material fact. *Sossamon*, 560 F.3d at 326; *U.S. v. 92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008). The non-moving party has a duty to respond with specific evidence demonstrating a disputed fact issue. *Celotex Corp. Cattrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *92,203.00 in United States Currency*, 537 F.3d at 507. When identifying specific evidence in the record, the non-movant must "articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004); *Raga v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

If the movant does not bear the burden of proof, the movant must show the absence of sufficient evidence to support an essential element of the opposing party's claim. *Norwegian Bulk Transp. A/S*, 520 F.3d at 412; *Ballard v. Burton*, 444 F.3d 391, 396 (5th Cir. 2006). Movants who do not bear the ultimate burden of proof often seek summary judgment after discovery has produced insufficient evidence to support the non-moving party's claims. Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case. *Celotex*, 477 U.S. at 324. The non-movant must "go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue" rather than relying on conclusory allegations. *Adams v. Travelers Indem. Co. of*

*Conn.*, 465 F.3d 156, 163–64 (5th Cir. 2006); *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007).  Ultimately, the motion should be granted if the non-moving party cannot produce evidence to support an essential element of its claim.  *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

## Analysis[4]

### 1.  Declaratory Judgments

Because the majority of the Claytons' causes of action are for declaratory relief, the Court finds it useful to set forth the requirements for declaratory relief.  An actual controversy between the parties must exist for declaratory relief; it is a requirement imposed by Article III of the Constitution and the express terms of 28 U.S.C. § 2201, the Federal Declaratory Judgment Act.  U.S. CONST. art. III, § 2; 28 U.S.C. § 2201.  Section 2201's "case of actual controversy requirement" is conterminous with Article III's "case or controversy requirement."  *Johnson v. Kan. City S. Railway Co.*, 208 Fed. Appx. 292, 297 (5th Cir. 2006).

The case or controversy requirement must be met "at the time the complaint was filed— post-filing conduct is not relevant."  *Vantage Trailers Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009).  However, a "'controversy must be extant at all stages of review, not merely at the time the complaint is filed.'"  *Alvarez v. Smith*, 130 S. Ct. 576, 580, 175 L. ed. 2d 447 (2009) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S. Ct. 2330, 45 L. Ed. 2d 272 (1975)).  Article III's case or controversy requirement has been defined by several doctrines, including standing, mootness, ripeness, and political question, which are all "'founded in concern about the proper—and properly limited—role of courts in a democratic society.'"  *Miss. State. Democratic*

---

[4] The Court generally notes that the Claytons' Response to Fifth Third's Motion for Summary Judgment (docket no. 99) is challenging to comprehend.  However, in light of the Claytons' pro se status, the Court has sifted carefully through the Response in search of applicable arguments and evidence that would raise a genuine issue of material fact with respect to each cause of action.

*Party v. Barbour*, 529 F.3d 538, 544 (5th Cir. 2008) (citing *Allen v. Wright*, 468 U.S. 737, 750, 104 S. Ct. 3315, 3324, 82 L. Ed. 556 (1984)).

Mootness has been described as "'the doctrine of standing set in a time frame:  The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness).'"  *Arizonans for Official English v. Ariz.*, 520 U.S. 43, 67 n.11, 117 S. Ct. 1055, 137 L. Ed. 2d 170 (1997) (citing *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397, 100 S. Ct. 1202, 63 L. Ed. 2d 479 (1980)).  To have standing, a plaintiff must show:  (1) that the plaintiff has suffered an "injury in fact," which is an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual and imminent; (2) that there is a causal connection between the injury and the conduct complained of; and (3) that the injury is likely to be redressed by a favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).

Assuming that there is standing, the Declaratory Judgment Act allows a federal court to "declare the rights and other legal relations of any interested party seeking such declaration."  *Johnson*, 208 Fed. Appx. at 297 (quoting 28 U.S.C. § 2201).  "Declaratory judgments cannot be used to seek an opinion advising what the law would be on a hypothetical set of facts."  *Vantage*, 567 F.3d at 748 (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2007)).

**2.  First Cause of Action:  Declaratory Relief to Determine the Owner and Holder of the Note, Mechanic's Lien Note, Other Loan Documents, and the Beneficiary of Liens Securing the Note**

The Claytons' First Cause of Action seeks to determine the owner and holder of the note. There is no dispute that Old Kent originally owned and held the note; however, the originally

executed note is lost.  As a result, the Claytons dispute that Fifth Third is the owner and holder of the note.

First, on June 8, 2009, the Court dismissed Old Kent as a party to the adversary proceeding based on evidence that Fifth Third acquired all of Old Kent's rights and obligations through a merger (docket no. 65).  The Court held that Fifth Third succeeded in interest to any notes and related documents held by Old Kent.

Because the originally executed note is lost, § 3.309 of the Texas Business & Commerce Code governs.  TEX. BUS. & COM. CODE § 3.309.  Section 3.309 provides that a person who is not in possession of an instrument is entitled to enforce the instrument if:  (1) the person meets the requirements under subsection (a); and (2) the person proves the terms of the note.  TEX. BUS. & COM. CODE § 3.309(b).

With respect to subsection (a):

A person who is not in possession of an instrument is entitled to enforce the instrument if:

(1) the person seeking to enforce the instrument:

(A) was entitled to enforce the instrument when loss of possession occurred;
. . . .
(2) the loss of possession was not the result of a transfer by the person or a lawful seizure; and

(3) the person cannot reasonably obtain possession of the . . . whereabouts [of the instrument] cannot be determined.

TEX. BUS. & COM. CODE § 3.309(a).  As evidence of its compliance with subsection (a), Fifth Third has filed an affidavit signed by Phil Bodle of Fifth Third.  Defendant's Exhibit 10.  Mr. Bodle's affidavit states that:

- He is familiar with the relevant books and/or electronic records related to this action and can testify to the facts regarding the lost note.

- An adjustable rate note secured by a deed of trust executed on June 23, 2000 was recorded in the County Clerk's Office for Harris County, Texas on June 20, 2000 with a Clerk's reference number of U477990.

- Fifth Third, as successor by merger to Old Kent, possess the contractual authority to enforce the note. The note was lost while it was in Fifth Third's possession. The loss is not the result of a transfer or a lawful seizure.

- The note's whereabouts cannot be determined; a search was conducted but the note was not located. However, Fifth Third should be in possession of the note.

- Fifth Third is in possession of the other original loan documents that were executed contemporaneously with the note.

The Court finds that Mr. Bodle's statements in his affidavit meet the requirements under §3.309(a).

With respect to proving the terms of the note, Fifth Third has provided a copy of the note with Mr. Clayton's signature. Defendant's Exhibit 12. As supporting evidence that the copy of the note is accurate, Fifth Third has also provided a copy of the other loan documents, i.e. the Uniform Residential Construction Loan Agreement and the Deed of Trust that secures the lost note. Defendant's Exhibits 11, 13. Both of these documents refer to a loan amount of $78,000.00, the amount of the lost note.

The Claytons do not seriously dispute that Fifth Third is the owner and the holder of the note. Though the Claytons point to a lack of recording and notarization information on Defendant's Exhibit 12, the Claytons do not allege that: (1) the note is held by a third party and not by Fifth Third; (2) that the note does not exist; or (3) the signature on Defendant's Exhibit 12 does not belong to Mr. Clayton. Rather, the Claytons' arguments revolve around the fact that the originally executed note is missing.

As evidence, the Claytons provide a copy of a title search on their residence that was performed by AFX Corporation, Inc. ("AFX") on October 15, 2008. Plaintiffs' Exhibit 5. The

title search is accompanied by the supporting affidavit of Dave Pelligrinelli, the Chief Executive Officer of AFX.  Plaintiffs' Exhibit 5.  The results of the title search show no other recording than the original transfer of the property to the Claytons, which was recorded on July 9, 1999.

First, the Court finds that though the October 15, 2008 title search may be relevant to the perfection of Fifth Third's secured claim, it is not probative to showing whether Fifth Third is the owner and holder of the note with the ability to enforce the lost note.  Second, the October 15, 2008 title search is not credible because the Claytons' other title search, which was performed on October 9, 2008, shows the recordation of the $78,000.00 lost note secured by a deed of trust.  Plaintiffs' Exhibit 4.  Specifically, it shows that the note was recorded on June 30, 2000 with a Clerk's reference number of U477990, the same information to which Mr. Bodle testified in his affidavit.

Because Fifth Third has met the requirements of § 3.309, and the Claytons have not raised a genuine issue of material fact with respect to Fifth Third's ability to enforce the lost note, the Court grants summary judgment for Fifth Third on the First Cause of Action.

**3.  Second Cause of Action:  Declaratory Relief to Determine the Terms of the Note, the Deed of Trust, and Other Loan Documents and Liens**

The Claytons' Second Cause of Action is to seek declaratory relief with respect to whether the loan converted from the construction period to the permanent phase, i.e. whether the loan "rolled-over."  The Second Cause of Action directly relates to the Claytons' Third Cause of Action, which is for misrepresentation by Fifth Third in characterizing the note as a "permanent phase" or long-term note in the prior bankruptcy case.  The Third Cause of Action is more fully explained below.

Fifth Third argues that because it has foreclosed on the residence, the Second Cause of Action is moot.  The Court agrees.  Whether the loan "rolled-over" is relevant with respect to the

role the terms of the note play in determining the parties' relationship in bankruptcy.  Now that Fifth Third has foreclosed on the residence, the terms of the note and whether the loan "rolled-over" are no longer relevant.

Furthermore, there is no evidence that Fifth Third wrongfully foreclosed.  The Claytons only respond that foreclosure would result in "irreparable harm."  Even if the Court were to construe the Claytons' argument that foreclosure was invalid, the Claytons have not pointed to any evidence to raise a genuine issue of material fact.

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") enacted several protections and remedies for creditors, including 11 U.S.C. § 362(c)(3).  Section 362(c)(3) provides that the automatic stay shall terminate on the 30th day after the filing of a bankruptcy case if the debtor is a repeat filer within the last year.  11 U.S.C. § 362(c)(3).  However, a debtor may extend the stay by filing a motion and showing that the case was filed in good faith.  11 U.S.C. § 362(c)(3)(B).  Suffice it to say that post-BAPCPA, the bankruptcy court's authority to take early control of the management of a case filed by a repeat filer is patent.

Pursuant to § 362(c)(3)(B), on December 10, 2008, the Court extended the automatic stay in Mrs. Clayton's present bankruptcy case on various conditions, including:  (1) monthly adequate protection payments of $620 to be paid directly to Fifth Third, commencing December 17, 2008; (2) the filing of this adversary proceeding by January 10, 1009; (3) the inclusion of Mr. Clayton and Clayton Huntley Homes in this adversary proceeding also by January 10, 2009; (4) Mrs. Clayton's agreement to waive her right to a jury trial; and (5) the amendment of Mrs. Clayton's schedules and statement of financial affairs within 20 days from December 3, 2008 (main bankruptcy case no. 08-37108, docket no. 31).

The Order also provides that:

> If . . . [Mrs.] Clayton fails to pay adequate protection payments . . . or file the adversary proceeding . . . , the automatic stay shall lift upon the filing of a Certificate of Default with the Court stating the reasons for the lifting of the automatic stay."

Mrs. Clayton failed to comply with the conditions extending the automatic stay: (1) as set forth in Fifth Third's certificate of default regarding termination of the stay, Mrs. Clayton did not make the required adequate protection payments;[5] (2) Mrs. Clayton did not include Mr. Clayton and Clayton Huntley Homes as necessary parties when she filed the adversary proceeding; and (3) Mrs. Clayton filed a demand for jury trial even though she had agreed to waive the right. The automatic stay, which was extended conditionally, terminated on any one of these unmet conditions.

Though the automatic stay had terminated already, Fifth Third filed a Certificate of Default on February 13, 2009 (main bankruptcy case no. 08-37108, docket no. 64). The Certificate states that Mrs. Clayton failed to make her adequate protection payments timely.[6] The Certificate confirmed that the stay was no longer in effect. After the stay terminated, Fifth Third was free to foreclose on the property, which it did.

To the extent that the Second Cause of Action may not be moot, Fifth Third does not disagree with the Claytons that the loan never rolled-over. Therefore, there is no justiciable controversy in any event. The loan did not roll-over and the construction period terms applied.

---

[5] The Court notes that Mrs. Clayton filed a Notice of Payment to Fifth Third with the Court on December 29, 2008, indicating a payment of $620.00 to Fifth Third (main bankruptcy case no. 08-37108, docket no. 45). Though Mrs. Clayton was not required to file notices of her adequate protection payments, the Court observes that no other notices were filed regarding subsequent adequate protection payments.

[6] The Court notes that the Certificate also states that Mrs. Clayton failed to file this adversary proceeding timely. Whether Mrs. Clayton timely filed this adversary proceeding was appealed to the District Court, which held that she did. *Clayton v. Fifth Third Mortgage Co.* (*In re Clayton*), No. H-09-2268 (S.D. Tex. Dec. 31, 2009). Therefore, the stay did not lift or terminate by reason of the timing of the filing of this adversary proceeding. It is not relevant to the discussion at hand, which is whether the stay otherwise lifted or terminated to allow Fifth Third to foreclose.

**4.  Third Cause of Action:  Damages for Misrepresentation of the Character of the Loan Documents**

The Claytons' Third Cause of Action is for damages based on Fifth Third's alleged intentional or negligent misrepresentation in the prior bankruptcy case that the loan converted from the construction period to the permanent phase, i.e. the loan "rolled-over."

Fifth Third argues that it made legal arguments to prevent what it saw as an improper cramdown of its claim in the prior bankruptcy case.[7]  Even if its legal arguments were incorrect, its legal arguments do not amount to actionable misrepresentation.  Fifth Third further asserts that the Claytons will be unable to show reliance, an essential element, because they vigorously opposed Fifth Third's legal arguments in the prior bankruptcy case.

The Court agrees with Fifth Third.  Fifth Third was free to make legal arguments in the prior bankruptcy case, even if those arguments were rejected.  Under the well-established *Noerr-Pennington* doctrine, a litigating party may not be sued for positions taken in litigation.  Liability may arise only if the position is a mere sham for a purpose external to the litigation.  *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 57, 113 S. Ct. 1920, 123 L.

---

[7] In the prior bankruptcy case, a valuation hearing was held on September 7, 2004 with respect to the Claytons' residence securing Fifth Third's claim.  The bankruptcy court found that the value of the residence was $90,000.00, even though Mrs. Clayton's then-filed plan placed the value of the residence at $140,000.00.  Defendant's Exhibits 14, 19.  Prior to the valuation hearing, Mrs. Clayton objected to Fifth Third's secured claim of $105,754.99, but it was allowed.  Defendant's Exhibits 17, 20.  Thus, before the valuation hearing, Fifth Third was over-secured under 11 U.S.C. § 506.

Mrs. Clayton subsequently amended her chapter 13 plan to reflect the new value of Fifth Third's secured claim based on the § 506 valuation.  Defendant's Exhibit 15.  The amended plan was confirmed, but it was eventually set-aside upon the chapter 13 trustee's motion.  Defendant's Exhibit 21.

After confirmation was set aside, Fifth Third filed its motion to reconsider the Court's determination of the valuation of the residence.  Defendant's Exhibit 18.  Fifth Third's theory was based on 11 U.S.C. § 1325(a)(5)(B)(ii), which provides that a chapter 13 plan must propose to distribute property having a value, as of the effective date of the plan, at least equal to the amount of the allowed secured claim.  Because there was no longer an effective date in place, Fifth Third wanted the value of the residence to be re-determined under § 506.  Fifth Third also mentioned in its motion the contemporaneous issue of whether the loan was of the short-term variety that would be modifiable and subject to lien stripping under 11 U.S.C. § 1322(c)(2).

Ed. 2d 611 (1993).  Parties must be free to make legal arguments in legal proceedings without fear of suit; that is part of our adversarial process.

The Court notes that if Fifth Third's arguments were frivolous, the Claytons could have sought sanctions under Rule 11.  FED. R. BANKR. P. 9011; FED. R. CIV. P. 11.

Additionally, because the Claytons opposed Fifth Third's legal positions rigorously in the prior bankruptcy case, the Claytons are unable to show that they relied on any alleged misrepresentations.  Therefore, the Court grants summary judgment in favor of Fifth Third.

**5.  Fourth Cause of Action:  Damages for Misrepresentation of the Owner and Holder of the Note**

The Claytons' Fourth Cause of Action alleges that Fifth Third misrepresented that it is the owner and holder of the note.  As set forth above, the Court deems that Fifth Third is the owner and holder of the note.  Therefore, summary judgment is granted in favor of Fifth Third.

**6.  Fifth and Sixth Causes of Action:  Violation of Automatic Stay and Contempt**

The Claytons' Fifth and Sixth Causes of Action are for violation of the automatic stay and for contempt.  Specifically, the Claytons assert that Fifth Third violated the automatic stay in the prior bankruptcy case when it tried to foreclose post-petition, but while the stay was still in effect.

Fifth Third requests summary judgment on both causes of action solely on the basis that the Claytons cannot demonstrate actual damages.  Fifth Third points to the Claytons' Answer to Interrogatory 3 as evidence.  Defendant's Exhibit 21a.

Interrogatory 3 states:  "Describe how you have been damages as a result of the facts pled by you relating to your claim for violations of the automatic stay in your prior bankruptcy."  The Claytons' Answer states that under 11 U.S.C. § 362(k), a debtor is entitled to and shall recover

all actual damages, including costs and attorneys' fees, for a willful violation of the automatic stay.  In addition, the Claytons reference their contract for services with their counsel.

Indeed, 11 U.S.C. § 362(k) does provide for actual damages inclusive of legal fees and costs.  11 U.S.C. § 362(k).  Furthermore, in their Amended Complaint, the Claytons do seek legal fees and costs.  Although the Claytons' Answer to Interrogatory 3 does not specify the *amount* of their damages, it is sufficient to overcome summary judgment.  On the basis that actual damages for willful violations of the automatic stay include legal fees and costs, the Court finds that the Claytons have raised a genuine issue of material fact.  Accordingly, the Court denies Fifth Third's request for summary judgment on the Fifth and Sixth Causes of Action.

**7.  Seventh Cause of Action:  Declaratory Relief Regarding the Mechanic Lien's Notice**

The Claytons' Seventh Cause of Action is for declaratory relief regarding whether Clayton Hunley Homes' mechanic's lien notice is enforceable and therefore, has an impact on title to the property and this adversary proceeding.

Fifth Third argues that the Claytons' Seventh Cause of Action is a back door attempt to obtain a judgment from the Court that Clayton Hunley Homes is not a necessary party to this adversary proceeding because its lien notice is invalid.  The Court agrees.

One of the essential purposes of the lawsuit is to determine title issues to the property.  At the December 10, 2008 hearing, the Court informed the parties that it would be useless to litigate these matters without binding all parties who might have an interest in the property.  To that end, the Court explicitly stated at that Clayton Hunley Homes must be joined and conditioned the extension of the automatic stay on the inclusion of Clayton Hunley Homes as a necessary party to this adversary proceeding.

If Clayton Hunley Homes' lien is invalid, that determination must be made in a judgment. Otherwise, Clayton Hunley Homes would potentially be able to revive the litigation, claiming that it was not bound by the judgment.

The Claytons request that the Court take judicial notice of its July 2, 2009 Order Granting, In Part, and Denying, In Part, Plaintiffs' Motion to Alter or Amend Scheduling Order (docket no. 72) as evidence that Clayton Hunley Homes has been dismissed. The Claytons' contention is wrong.

The Court did not dismiss Clayton Hunley Homes. Rather, its July 2, 2009 Order merely denied Plaintiffs' Motion to Amend with respect to Mrs. Clayton's request that any references in that she failed to name all necessary parties to the adversary proceeding in the Scheduling Order be deleted.

Fifth Third requests that the Court adopt its expert's opinion that the mechanic lien's notice has an impact on title to the property. The Court finds such an adoption unnecessary. The Court has already expressed that Clayton Hunley Homes is a necessary party to this adversary proceeding, for the above-discussed reasons.

The mechanic's lien notice became substantively irrelevant when the residence was foreclosed. The Court will not issue declaratory relief on this matter because it is now moot.

## 8.  Eighth Cause of Action:  Mr. Clayton's Statute of Limitations Defense

The Claytons' final and Eighth Cause of Action seeks a declaratory judgment that the statute of limitations bars Fifth Third's recovery action against Mr. Clayton on the note. The Claytons cite:  (1) § 16.004(3) of the Texas Civil Practice and Remedies Code to set forth four years as the time limit to enforce a debt after the cause of action accrues; and (2) § 16.035 of the Texas Civil Practice and Remedies Code to set forth four years as the time limit

to enforce a lien on real property after the cause of action accrues.  TEX. CIV. PRAC. & REM. CODE §§ 16.004(3), 16.035.  The Claytons allege that Mr. Clayton, the only signer on the note, defaulted on the note in 2000.  Acceleration occurred in 2003.  Accordingly, the argument proceeds that 2003 was the last year in which Fifth Third could pursue a cause of action for default on the note and 2007 was the last year in which Fifth Third could exercise its right to foreclose.  The Claytons further assert that no action has ever been taken against Mr. Clayton by Fifth Third regarding the note.

Fifth Third denies that its counterclaim is time-barred, but also alleges that its presently filed counterclaim was timely pursuant to § 16.069 of the Texas Civil Practice and Remedies Code.  TEX. CIV. PRAC. & REM. CODE § 16.069.  Section 16.069 provides:

> (a)  If a counterclaim . . . arises out of the same transaction or occurrence that is the basis of an action, a party to the action may file the counterclaim . . . even though as a separate action it would be barred by limitation on the date the party's answer is required.
>
> (b)  The counterclaim . . . must be filed not later than the 30th day after the date on which the party's answer is required.

*Id.*

Fifth Third was served with the Claytons' Amended Complaint on April 22, 2009, in which Mr. Clayton was added as a plaintiff.  Fifth Third filed its answer to the Amended Complaint and counterclaimed against Mr. Clayton on April 28, 2009, well before the § 16.069 deadline.  Its counterclaim is not time-barred.

Because the Court finds that Fifth Third's counterclaim was timely asserted pursuant to TEX. CIV. PRAC. & REM. CODE § 16.069, the Court need not consider Fifth Third's other arguments.  The Court grants summary judgment in favor of Fifth Third.

## **<u>Conclusion</u>**

For the reasons set forth above, the Court grants, in part, and denies, in part, Fifth Third's

motion for summary judgment.  The Court will issue a separate order.

SIGNED **<u>March 17, 2010.</u>**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE