

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
10/29/2010

| | | |
|---|---|---|
| IN RE: § | | |
| **LUCILLE L. CLAYTON; fka DELMELLO,** § | Case No. 08-37108 | |
| Debtor(s). § | | |
| § | Chapter 13 | |
| § | | |
| **LUCILLE L. CLAYTON,** *et al*, § | | |
| Plaintiff(s) § | | |
| § | | |
| VS. § | Adversary No. 09-03024 | |
| § | | |
| **OLD KENT MORTGAGE COMPANY,** *et al*, § § | | |
| Defendant(s). § | Judge Isgur | |

## MEMORANDUM OPINION

Lucille and Jimmy Clayton filed this adversary proceeding against Fifth Third Mortgage Company ("Fifth Third") for violation of the automatic stay. The Court finds that Fifth Third knowingly violated the automatic stay. For the reasons set forth below, the Court awards debtor damages for costs, litigation expenses, and attorney's fees. The Court denies damages for emotional distress.

### Background

Lucille and Jimmy Clayton contracted with Clayton Hunley Homes Corporation ("Clayton Hunley"), Mr. Clayton's construction company, to build their residence. The Claytons issued Clayton Hunley a promissory note for $69,000.00, secured by a mechanics' lien, to fund construction. In June 2000, the Claytons obtained a construction loan from Fifth Third, refinancing their $69,000.00 note with a new $78,000.00 note secured by a deed of trust. The Claytons also transferred the mechanics' lien and other rights and warranties under the construction contract between the Claytons and Clayton Hunley.

1 / 9

The Claytons filed for chapter 13 relief in August 2003. Fifth Third nevertheless attempted to accelerate the promissory note and foreclose on their residence in September-October 2003. The Claytons filed an adversary proceeding against Fifth Third in 2007. After mediation, a remand, and other related state court litigation, the Claytons' dispute with Fifth Third remained unresolved.

Over five years after the Claytons filed their 2003 bankruptcy case, the case was closed in 2008 without confirmation of a plan. The Claytons filed a second chapter 13 bankruptcy case in November 2008 and timely filed a motion to extend the automatic stay under § 362(c)(3)(B). This Court decided to resolve all disputes between the parties in an expedited manner and extended the automatic stay with certain conditions. Mrs. Clayton did not comply with the Court's Order conditioning the automatic stay, leading Fifth Third to file a Certificate of Default in February 2009 and to foreclose on the Claytons' residence.

In January 2009, the Claytons filed an adversary proceeding seeking a declaratory judgment defining the parties' rights and obligations under the construction documents, damages from alleged misrepresentations and stay violations, a contempt finding, and legal fees and costs. In September 2009, Fifth Third filed a motion for summary judgment with respect to all the Claytons' causes of action.[1] This Court granted Fifth Third's motion for summary judgment with respect to all the causes of action except for the Claytons' claims, based on Fifth Third's conduct in the Claytons' earlier bankruptcy, for violation of the automatic stay and contempt.

---

[1] Specifically, (1) Declaratory Relief to Determine the Owner and Holder of the Note, Mechanic's Lien Note, Other Loan Documents, and the Beneficiary of Liens Securing the Note; (2) Declaratory Relief to Determine the Terms of the Note, the Deed of Trust, and Other Loan Documents and Liens; (3) Damages for Misrepresentation of the Character of the Loan Documents; (4) Damages for Misrepresentation of the Owner and Holder of the Note; (5) Violation of Automatic Stay; (6) Contempt; (7) Declaratory Relief Regarding the Mechanic Lien's Notice; and (8) Mr. Clayton's Statute of Limitations Defense.

At the June 25, 2010 hearing, the Claytons, pro se, testified that they had incurred $3,438 in damages from attorney's fees ($2,231.00) and actual damages ($1,207.00[2]) as a result of the automatic stay violation. Fifth Third's representative testified that Fifth Third was unaware of the Claytons' bankruptcy at the time of the foreclosure, but the Court found (in oral findings of fact and conclusions of law rendered at the conclusion of the hearing pursuant to Fed. R. Bankr. P. 7052(a)(1)) that Fifth Third had received notice of the bankruptcy. The Court ultimately found that Fifth Third had knowingly violated the automatic stay. The Court now completes its findings of fact and conclusions of law and determines the amount of damages the Claytons should be awarded based on Fifth Third's automatic stay violation.

## Jurisdiction

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334. This proceeding is core under 28 U.S.C. § 157(b). Venue is proper in this District pursuant to 28 U.S.C. § 1409.

## Analysis

Under § 362(k)(1) of the Bankruptcy Code, an individual injured by a willful violation of the automatic stay "shall recover actual damages, including costs and attorneys' fees." 11 U.S.C. § 362(k)(1). "The words 'shall recover' indicate that Congress intended that the award of actual damages, costs and attorney's fees be mandatory upon a finding of a willful violation of the stay." *In re Roman*, 283 B.R. 1, 7 (B.A.P. 9th Cir. 2002) (quoting *Ramirez,* 183 B.R. 583, 589 (B.A.P. 9th Cir. 1995).

Despite the mandatory language of § 362(k), the debtors have the burden to prove their actual damages. *In re Collier*, 410 B.R. 464, 476 (Bankr. E.D. Tex. 2009) (citing *In re All-Trac Transp., Inc*. 223 Fed. Appx. 299, 302 (5th Cir. 2006); *In re Dayley*, 349 B.R. 825, 829 (Bankr.

---

[2] Though the Claytons testified that $1,207.00 is the amount of their actual damages, the number appears to be $1,213.87 based on their own cost of litigation ($829.41), expenses ($25.00) and medical damages ($359.46). This changes the total damages amount to $3,444.87.

D. Idaho 2006) (citing *In re Risner*, 317 B.R. 830, 837 (Bankr. D. Idaho 2004). Furthermore, § 362(k) damages "must be proven with reasonable certainty and may not be speculative or based on conjecture." *In re Collier*, 410 B.R. at 476 (citing *Archer v. Macomb Cnty Bank*, 853 F.2d 497, 499-500 (6th Cir. 1988); *In re Frankel*, 391 B.R. 266, 272 (Bankr. M.D. Pa. 2008); *Hutchings v. Ocwen Federal Bank, FSB (In re Hutchings)*, 348 B.R. 847, 893 (Bankr. N.D. Ala. 2006).

If the Claytons had not commenced the adversary proceeding, Fifth Third would never have been held accountable for its violation of the automatic stay. *See In re McClure*, 430 B.R. 358, 363 (Bankr. N.D. Tex. 2010). This Court recognizes the importance of "encouraging parties to defend and vindicate orders of the court." *Id.* at 364. If debtors did not pursue violations of automatic stay, such violations would likely increase. *Id.*

### Costs

The Claytons seek costs in the amount of $829.41. As used in the Federal Rules of Civil Procedure and in the federal attorney's fees statutes, costs usually refer only to charges that a party may recover as incident to the judgment in the action, rather than to the total liability the party has incurred. *Virginia McC by Mr. and Mrs. McC v. Corrigan-Camden Independent School Dist.*, 909 F.Supp. 1023, 1033 (E.D. Tex. 1995) (citing *Copper Liquor v. Adolph Coors, 684 F.2d 1087, 1098 (5th Cir.1982)). 28 U.S.C. § 1920 lists six items as taxable costs:

> (1) Fees of the clerk and marshal; (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and copies of papers necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

Specifically, the Claytons seek reimbursement for: (i) the filing of their original state court petition (on October 16, 2007; $249.88); (ii) 6-7 transcripts (from September 7, 2004 to May 12, 2008; $552.50); (iii) ink (December 19, 2007; $9.03); and (iv) certified copies for trustee sale ($18.00). The Claytons testified that these costs were all incurred in connection with litigating the automatic stay violation. Furthermore, Fifth Third has not opposed any of the Claytons' requests for costs.

Accordingly, the Claytons are awarded $829.41 for the costs set forth in the statute.

### Emotional Distress Damages

The Claytons also seek $359.46 in emotional distress damages. The Fifth Circuit has not yet adopted a precise standard for awarding emotional distress damages under § 362(k). However, the Fifth Circuit has stated that if it were to award emotional distress damages, the party would be "required to set forth 'specific information' concerning the damages caused by his emotional distress rather than relying only on 'generalized assertions.'" *In re Repine*, 536 F.3d 512, 521-22 (5th Cir. 2008) (citing *Fleet Mortg. Group, Inc. v. Kaneb*, 196 F.3d 265, 269 (1st Cir. 1999)).

Lower courts have awarded emotional distress damages where the plaintiffs showed a specific injury and proved that the injury was caused by the automatic stay violation. The court in *Collier*, for example, awarded emotional distress damages when the party presented evidence of "a specific discernable injury to the claimant's emotional state, proven with evidence regarding the nature and extent of the harm." *In re Collier*, 410 B.R. at 477 (citing *Hitt v. Connell*, 301 F.3d 240, 250-51 (5th Cir. 2002)). The *Gervin* court awarded emotional distress damages when "a reasonable relationship [was demonstrated] between the violation of the

discharge injunction and the emotional injuries." *In re Gervin*, 337 B.R. 854, 860 (Bankr. W.D. Tex. 2005) (citing *In re Torres*, 309 B.R. 643, 649-50 (1st Cir. BAP 2004)). However, the *McClure* court refused to award emotional distress damages when the party could establish "at most a tenuous, correlative relationship" between the party's emotional distress and the violation. *In re McClure*, 420 B.R. 655, 663 (Bankr. N.D. Tex. 2009).

At trial, Mr. and Mrs. Clayton testified that Fifth Third's violation of the automatic stay increased Mrs. Clayton's stress levels and aggravated her diabetic condition. Mrs. Clayton explained that she was diagnosed with borderline diabetes in 2001 and gave testimony regarding four doctor visits in 2007.[3] She further testified that she took Atenolol from 2006 to 2009, but seeks only $59.46 because she could find only one receipt. She also stated that she had refilled a diabetes prescription for $25.00.

The Claytons have failed to establish a causal relationship between the automatic stay violation and Mrs. Clayton's diabetic condition.

The Court has no doubt that the Claytons were undergoing stress. They were in serious financial jeopardy and had to confront new and troubling legal issues concerning whether they could retain their home. But, the Court must sift through the stress and determine (1) whether the stress was caused by the Clayton's general financial predicament or by the automatic stay violations; and (2) whether the stress actually aggravated Mrs. Clayton's medical condition.

Mrs. Clayton testified that her diabetic condition started approximately two years before the automatic stay violation and continued at least 4 years after the automatic stay violation. The Court determines that she has failed to establish that the automatic stay violation either caused or exacerbated her medical condition. Indeed, all of the medical expenses identified by Mrs.

---

[3] Mrs. Clayton testified that the first doctor's visit was on 2/8/07 for $125.00; the second was 2/21/07 for $50.00; the third was on 3/20/07 for $50.00; and the fourth was on 8/29/07 for $50.00.

Clayton were incurred about 4 years after the automatic stay violation ceased.

In the testimony regarding her doctor visits, Mrs. Clayton simply provided the dates, costs, and a brief description of some of the visits.[4] Such testimony does not establish any kind of causation between the automatic stay violation and her diabetic condition.

Though the Court recognizes that the Claytons did suffer hardship as a result of the automatic stay violation, the Claytons have not met their burden of proof in establishing causation. It is not clear to the Court whether Mrs. Clayton's medical expenses are simply the result of the normal course of her diabetes or if they are a result of the automatic stay violation.

Accordingly, the Court denies the Claytons' request for emotional distress damages.

### Legal Fees

The Claytons seek legal fees of $2,231.00. It is proper to award attorney's fees incurred while prosecuting a § 362(k) claim. *In re Repine*, 536 F.3d at 522 (citing *Mitchell v. BankIllinois*, 316 B.R. 891, 901-04 (S.D. Tex. 2004); *In re Still*, 117 B.R. 251, 254-55 (Bankr. E.D. Tex. 1990). "Where the debtor is forced to resort to the courts to enforce his rights, attorney's fees should be awarded to the debtor's attorney in order to make the debtor whole." *In re Lile*, 103 B.R. 830, 841 (Bankr. S.D. Tex. 1989).

Mrs. Clayton testified that the Claytons incurred $2,231.00 in attorney's fees between 2004 and 2006 fighting the automatic stay violation. Though the Claytons did not put on precise testimony that the attorney's fees are reasonable, the Court finds that the amount sought by the Claytons is reasonable under the circumstances.

Accordingly, the Court grants the Claytons attorney's fees in the amount of $2,231.00.

---

[4] Mrs. Clayton testified that her in her first visit, Dr. Patel treated her for diabetes, and in her second visit, she had a 10 minute briefing on how to control diabetes.

**Parking Expenses**

The Claytons seek $25.00 for parking expenses associated with the automatic stay violation. Parking expenses are not costs as defined by 28 U.S.C. § 1920. However, courts have awarded parties travel expenses incurred in consulting with their attorney to fight an automatic stay violation. *In re Roman*, 283 B.R. at 9; *In re Dayley*, 349 B.R. at 829; *In re Gorringe*, 348 B.R. 789 (Bankr. D. Idaho 2006). Courts have also awarded parties travel expenses incurred as a result of attending hearings and trials associated with the automatic stay violation. *In re Rawles*, 2009 WL 2924005, at *4 (Bankr. D. Md. 2009); *In re Jones*, 389 B.R. 146,158 (Bankr. D. Mont. 2008); *In re Dayley*, 349 B.R. at 829; *In re Capion*, 2000 WL 35798603, at *6 (Bankr. S.D. Iowa 2000); *In re Neal*, 106 B.R. 90, 93 (Bankr. E.D.N.C. 1989). Furthermore, this Court and other bankruptcy courts have specifically awarded parking expenses incurred by parties litigating an automatic stay violation. *In re Stoker*, 2010 WL 958030, at *7 (Bankr. S.D. Tex. 2010); *In re Fridge*, 239 B.R. 182, 192 (Bankr. N.D. Ill. 1999).

The Claytons testified they incurred the $25.00 parking fees when going to court to litigate the automatic stay violation. Therefore, an award of $25.00 in travel expenses constitutes "actual damages"[5] under § 362(k). *See In re Roman*, 283 B.R. at 9.[6]

Accordingly, the Court grants the Claytons damages in the amount of $25.00 for their parking expenses.

---

[5] Actual damages are a "money judgment in compensation for a legally recognized injury or harm." *In re Roman*, 283 B.R. at 9 (citing *Sizemore v. Dayton Emergency Specialists*, 138 B.R. 540, 541 (Bankr. S.D. Ohio 1992).

[6] The court in *In re Rushing* denied travel expenses and other expenses associated with their litigation. *In re Rushing*, 424 B.R. 747, 754 (Bankr. M.D. La. 2010). However, the court offered no support for its denial. *Id.* Furthermore, the litigation involved Louisiana state law fraud claims, not enforcement of a court order. *Id.* at 755

**Conclusion**

The Court awards the Claytons damages in the amount of $3,085.41.  A final judgment, incorporating this award, will be issued.

SIGNED **October 29, 2010.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE